IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 37746

| | |
|---|---|
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, ) ) | 2010 Opinion No. 72 |
| Petitioner-Respondent, ) ) | Filed: November 4, 2010 |
| v. ) ) | Stephen W. Kenyon, Clerk |
| JOHN DOE I AND JANE DOE II, ) ) | |
| Respondents-Appellants. ) ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge. Hon. Gregory F. Frates, Magistrate Judge.

Decree of protective custody, affirmed.

James F. Wickham, Canyon County Public Defender, Caldwell, for appellant. James F. Wickham argued.

Hon. Lawrence G. Wasden, Attorney General; Brent R. King, Deputy Attorney General, Caldwell, for respondents. Brent R. King argued.

_____

GUTIERREZ, Judge

John Doe I and Jane Doe II (Parents) appeal from the decision of the district court affirming the magistrate's Decree of Protective Custody placing three of the couple's children in the protective custody of the Idaho Department of Health and Welfare. For the reasons set forth below, we affirm.

I.

FACTS AND PROCEDURE

The district court summarized the background of the case as follows:

At 2:40 P.M. on July 22, 2009, the Canyon County Prosecuting Attorney filed a Petition Under the Child Protective Act requesting that the court take jurisdiction over [A.L., B.L., and R.L.], all minor children living within the state

1

of Idaho, pursuant to Idaho Code Section 16-1603. The Petition alleges that the above-named children:

> are physically abused because of conduct or omission resulting in an injury, and such condition is not justifiably explained or at variance with the degree or type of injury or may not be the product of an accidental occurrence, to wit: the father struck [A.L.] with a wooden dowel on the buttocks, leaving welts and/or injuries. The father struck [B.L.] with a wooden broom handle, leaving welts and/or injuries.

The Petition also alleged that the children were in foster care; that they had been in foster care since July 22, 2009, at approximately 3:00 A.M.; that the children were placed in foster care based on imminent danger to them; and that it was in the children's best interest to remove them from the home.

Also on July 22, 2009, the State filed motions requesting the court to appoint counsel for [Parents]. On the same date, the court entered orders appointing the Canyon County Public Defender as counsel for [Parents] and an order scheduling a shelter care hearing on July 24, 2009, at 10:30 A.M., a pretrial conference on August 13, 2009, and an adjudicatory hearing on August 20, 2009.

On July 24, 2009, at the time scheduled for the shelter care hearing, [Parents'] court-appointed counsel failed to appear with [Parents] for the hearing. After [Parents] indicated they wished to have counsel present for the hearing, the court continued the hearing to July 27, 2009, and entered an Order of Temporary Legal Custody Pending Shelter Care, placing the children in the temporary legal custody of the Idaho Department of Health and Welfare (the Department) pending the shelter care hearing. . . .

On July 27, 2009, the court held the shelter care hearing. [Parents] appeared with their court-appointed counsel. . . .

At the conclusion of the shelter care hearing, the court determined that the children should remain in shelter care pending the adjudicatory hearing, that it would be contrary to the children's welfare to leave them in the home pending the adjudicatory hearing, and that it was in the children's best interests to remain in the Department's custody. The court also entered an order appointing counsel to represent the children's guardian ad litem.

On July 29, 2009, the guardian ad litem's appointed counsel filed a Notice of Conflict.

On August 11, 2009, [Parents] filed a *pro se* Motion for Dismissal. . . . [Parents] requested an order dismissing the proceeding and requested that the children be released to them on essentially five grounds. . . .

On August 19, 2009, the State filed its Objection and Motion to Strike Re: [Parents] Motion for Dismissal.

On August 20, 2009, the date scheduled for the adjudicatory hearing, the court addressed [Parents'] issue with their appointed counsel and the motion for leave to withdraw on the part of the guardian's counsel. After granting the

motion to withdraw by the guardian's counsel and securing substitute counsel for the guardian, the court continued the hearing to August 25, 2009.

On August 25, 2009, the magistrate judge assigned to hear the adjudicatory hearing stated that she would need to disqualify herself from the matter based on the accidental receipt of an *ex parte* communication from the State. The court reset the adjudicatory hearing for September 3, 2009. In response to the court's inquiry, the State indicated that it had filed the Department's report on August 17, 2009, and had e-mailed it to [Parents'] counsel.

On September 3, 2009, the court commenced the adjudicatory hearing on the merits. The adjudicatory hearing concluded on September 8, 2009.

On September 17, 2009, the magistrate issued a decree of protective custody, placing the three children under the protective custody of the Department for an indeterminate period of time, not to exceed their eighteenth birthdays. Parents appealed the decree to the district court, contending that the trial court lacked jurisdiction to enter the decree, that the trial court erred in admitting certain evidence, and that the trial court's determination that the children fell under the jurisdiction of the CPA was not supported by a preponderance of the evidence. The district court affirmed the magistrate's decree placing the children in the Department's custody. Parents now appeal.

## II.

## ANALYSIS

On appeal, Parents argue that the magistrate did not have jurisdiction to enter the decree placing the children in the Department's custody where it failed to hold a shelter care hearing within forty-eight hours of the children's removal from the home, where the report of the investigation was not delivered to Parents prior to the pretrial conference, where the adjudicatory hearing was not held within thirty days from the date the Department's petition was filed, where the state failed to prove by a preponderance of the evidence that the two older children had been "abused" within the meaning of the statute, and where there was no evidence that the youngest child fell within the jurisdiction of the court. Parents also raise several evidentiary issues in regard to the adjudicatory hearing, arguing that the trial court erred in failing to exclude evidence obtained in violation of Parents' right to be free of warrantless searches and seizures, in failing to exclude all evidence and inferences therefrom obtained after Father invoked his Fifth Amendment right to remain silent, in considering the evidence in the investigation report, and in admitting copies of photographs which Parents contend did not accurately depict the children's

injuries. Parents also contend their Fourteenth Amendment right to due process, as set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), was violated by the Department's failure to disclose all material exculpatory and inculpatory evidence prior to the adjudicatory hearing.

Initially, we note that while the appeal is pursued as to all three children, the record on appeal indicates that the case was dismissed as to R.L., the youngest child, on February 4, 2010, and B.L., the second youngest child, on June 3, 2010. A subsequent "Order Modifying Case Plan and Notice of Hearing" issued by the district court on June 3, 2010, references only A.L. in regard to modification of the case plan. This is significant because normally it would render this appeal moot as to the two younger children. A case becomes moot, and therefore will not be considered by the court, when the issues presented are no longer live, the parties lack a legally cognizable interest in the outcome, or a judicial determination will have no practical effect upon the outcome. *Goodson v. Nez Perce County Bd. of County Comm'rs*, 133 Idaho 851, 853, 993 P.2d 614, 616 (2000). There are three recognized exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *Ameritel Inns, Inc. v. Greater Boise Auditorium Dist.*, 141 Idaho 849, 851-52, 119 P.3d 624, 626-27 (2005).

Here, the remedy requested by Parents is reversal of the magistrate's decree vesting custody of the three children with the Department. However, the magistrate's dismissal of the case as to R.L. and B.L. indicates that the Department has already been divested of custody of the two younger children--thus, a judicial determination would have no practicable effect on the outcome as to them. At oral argument, in response to the court's inquiry, Parents argued for the first time that the issues pursued on appeal are not moot as to the two younger children, because they are subject to reoccurrence in general--and in regard to this family in particular. To the extent that an exception to the mootness doctrine would apply here, it would only be applicable as to the general legal issues raised that are potentially capable of evading review and thus capable of repetition and would not be applicable to the magistrate's specific findings unique to this particular incident. Thus, assuming without deciding that Parents' mootness exception argument applies at least partially, we will address this appeal as to all three children in the context of the jurisdictional and constitutional evidentiary issues, but will limit our review on

4

appeal to A.L. in regard to admission of the photographic evidence and the court's determination that the children fell within the jurisdiction of the court pursuant to the CPA.

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

## A. Jurisdiction to Enter Decree of Protective Custody

Parents point to three errors by the magistrate which they argue operated to deprive the court of jurisdiction to continue to order that custody of the three children be placed in the Department. Specifically, they contend that: (1) the magistrate was not authorized to order the continued shelter care of the children because the shelter care hearing was not held within forty-eight hours of the child's removal from the home as required by statute;[1] (2) the children should have been returned to Parents' custody when the report of the investigation was not delivered to them prior to the pretrial conference as required by statute;[2] and (3) the magistrate lost jurisdiction--and therefore was without authority to enter the decree vesting custody in the

---

[1] The Child Protective Act (CPA) provides that:

> [w]hen a child is taken into shelter care . . . he may be held for a maximum of forty-eight (48) hours, excluding Saturdays, Sundays and holidays, unless a shelter care hearing has been held pursuant to section 16-1615, Idaho Code, and the court orders an adjudicatory hearing.

Idaho Code § 16-1608(2). It is undisputed that the first shelter care hearing did not commence in this case until July 24, 2009, at 10:30 a.m.--approximately seven and a half hours past the forty-eight-hour statutory deadline.

[2] CPA requires that the Department investigate "the circumstances of the child and his family and prepare a written report to the court" and that it "shall be delivered to the court with copies to each of the parties *prior to the pretrial conference* for the adjudicatory hearing." I.C. § 16-1616(1), (2) (emphasis added). It is undisputed that the Department did not deliver the Report of Investigation prior to the pretrial conference, as it was filed five days later on August 17, 2009.

5

Department--because it failed to conduct an adjudicatory hearing within thirty days after the petition was filed as required by statute.[3]

As the state points out, however, Parents did not object to these errors at the time they occurred, nor have they cited any authority for their contention that any of these three errors, if they occurred, are jurisdictional in nature such that they deprived the district court of subject matter jurisdiction in the case. And where none of the statutes implicated prescribe consequences for timeliness deviations--jurisdictional or otherwise--this is an issue of statutory interpretation as well as an issue of first impression in Idaho.

The interpretation of a statute is an issue of law over which we exercise free review. *Corder v. Idaho Farmway, Inc.*, 133 Idaho 353, 358, 986 P.2d 1019, 1024 (Ct. App. 1999). When interpreting a statute, we will construe the statute as a whole to give effect to the legislative intent. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539-40, 797 P.2d 1385, 1387-88 (1990); *Corder*, 133 Idaho at 358, 986 P.2d at 1024. The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Messenger*, 118 Idaho at 540, 797 P.2d at 1388; *Corder*, 133 Idaho at 358, 986 P.2d at 1024.

Here, none of the three statutes at issue indicate the appropriate remedy for failing to follow the statutory deadline. Thus, we turn to an examination of whether a loss of jurisdiction is contemplated by the prescriptions in the CPA.

In *State v. Armstrong*, 146 Idaho 372, 195 P.3d 731 (Ct. App. 2008), this Court engaged in an extensive analysis of subject matter jurisdiction, including identifying the type of errors that can be considered jurisdictional. We first noted that a determination that a court lacked subject matter jurisdiction to issue an order or judgment carries far-reaching consequences-- including that the defense of lack of jurisdiction over subject matter is never waived and that

---

[3]     CPA provides that:

> When a petition has been filed, the court shall set an adjudicatory hearing to be held no later than thirty (30) days after the filing of the petition.

I.C. § 16-1619(1). Here, the Department filed the petition on July 22, 2009, and on the same day, the court set the date for the adjudicatory hearing on August 20, 2009. However, on August 20, the hearing was continued until August 25, at which point it was again continued until September 3.

purported judgments entered without jurisdiction are void and subject to collateral attack and are not entitled to recognition in other states. For this reason, we noted that our Supreme Court has recognized the importance of keeping the concept of subject matter jurisdiction "clearly defined" and that "it may work considerable mischief to confuse lack of jurisdiction over the subject matter with questions of venue, other aspects of jurisdiction, or defenses which may bar relief or render it improper or inappropriate for a court to proceed with a case even though it has jurisdiction over the subject matter." *Id*. at 733, 195 P.3d at 374 (quoting *Sierra Life Ins. Co. v. Granata*, 99 Idaho 624, 627, 586 P.2d 1068, 1071 (1978)).

We then noted that our Supreme Court has, at times, employed a narrow definition of subject matter jurisdiction. For example, in *Boughton v. Price*, 70 Idaho 243, 249, 215 P.2d 286, 289 (1950), the court explained the definition as follows:

> Such jurisdiction the court acquires by the act of its creation, and possesses inherently by its constitution; and it is not dependent upon the sufficiency of the bill or complaint, the validity of the demand set forth in the complaint, or plaintiff's right to the relief demand, the regularity of the proceedings, or the correctness of the decision rendered.

Similarly, in *State v. Rogers*, 140 Idaho 223, 227-28, 91 P.3d 1127, 1131-32 (2004), the Supreme Court noted that "subject matter jurisdiction does not depend on the particular parties in the case or on the manner in which they have stated their claims, nor does it depend on the correctness of any decision made by the court. . . ." However, in *Armstrong*, we also noted that the term "jurisdiction" had also been used in Idaho "more loosely to refer simply to a court's authority to take a certain action or grant a certain type of relief. That is, courts and lawyers sometimes say that a court lacked jurisdiction when they really mean simply that the court committed error because the action that was taken did not comply with governing law." We noted that the "overuse" of the term in this manner has been recognized even by the United States Supreme Court, that commented:

> "Jurisdiction," this Court has observed, "is a word of many, too many, meanings." . . . . This Court, no less than other courts, has sometimes been profligate in its use of the term. For example, this Court and others have occasionally described a nonextendable time limit as "mandatory and jurisdictional." . . . But in recent decisions, *we have clarified that time prescriptions, however emphatic, "are not properly typed 'jurisdictional.'"*

7

*Armstrong*, 146 Idaho at 376, 195 P.3d at 735 (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510 (2006)) (emphasis added).

Here, Parents do not assert that the trial court did not have jurisdiction over the *type* of case presented--only that the court lost jurisdiction by not following the time prescriptions in the CPA. However, under the contours of jurisdiction as espoused by the United States Supreme Court--and by this Court in *Armstrong*--such deviations from the statute would not result in the court's loss of jurisdiction over the case absent express legislative direction to the contrary. *Accord People in Interest of A.M.,* 786 P.2d 476, 478 (Colo. Ct. App. 1989) (holding that violation of timeliness requirement of statute which required that if neglect petition is not filed within seven working days after a child is taken into custody, the child should be released upon order of the court, did not deprive court of subject matter jurisdiction where the father did not object to continued placement of the children); *In re Nashiah C.*, 866 A.2d 669, 676 (Conn. App. Ct. 2005) (holding that provision of statute requiring hearing on child neglect petition within ten days of a preliminary hearing on order of temporary custody was directory, rather than mandatory, and thus, the judge had jurisdiction to act on the temporary custody order even though the mother did not receive a hearing on the petition within ten days of the preliminary hearing); *In re John Paul J.*, 799 N.E.2d 769, 776 (Ill. App. Ct. 2003) (holding that in Illinois, violation of the forty-eight-hour shelter care hearing requirement is not jurisdictional); *In re Prater*, 471 N.W.2d 658, 659 (Mich. Ct. App. 1991) (holding, in a termination of parental rights case, that failure to comply with the statutory rule requiring that an adjudicative hearing take place within forty-two days after the preliminary hearing does not affect the jurisdiction of the court); *In re Dj.L.*, 646 S.E.2d 134, 139-40 (N.C. Ct. App. 2007) (recognizing that in North Carolina, time limits in the juvenile code are not considered jurisdictional and violations are only reversible if prejudice arose from the time delay); *In re Davis*, 705 N.E.2d 1219, 1221-22 (Ohio 1999) (holding that the seven-day time limit for entering judgment after the conclusion of a disposition hearing for children adjudicated abused, neglected, or dependent is directory, not mandatory, and failure to comply with the timeframe did not deprive the court of jurisdiction where, as a general rule, a statute which provides a timeframe for the performance of an official duty will be construed as directory rather than mandatory so far as time for performance is concerned, especially where the statute fixes the time simply for convenience or orderly procedure, unless the nature of the act to be performed or phraseology of the statute is such that

the designation of time must be considered a limitation upon the power of the officer); *In re E.D.L.*, 105 S.W.3d 679, 687 (Tex. App. 2003) (holding that trial court did not lose jurisdiction over mother's termination of parental rights case due to its failure to conduct a full adversarial hearing within fourteen days after the state had taken possession of the child as was required by statute because the statutory requirement was procedural, not jurisdictional); *In re DSB*, 176 P.3d 633, 638 (Wyo. 2008) (holding that a juvenile court's failure to hold an adjudicatory hearing in a child neglect action within ninety days of the petition, as required by the Child Protection Act, did not deprive the court of jurisdiction over the entire matter absent unequivocal statutory language requiring such loss of jurisdiction for violation of a deadline). *But see In re Doe*, 495 A.2d 1293, 1298 (N.H. 1985) (explaining that court's previous ruling that the statutory mandate to hold adjudicatory hearings within certain time limits was jurisdictional was in reference to "personal jurisdiction" grounded in the court's holding that the juvenile had a personal liberty interest in a "speedy trial"); *In re Termination of Parental Rights to Moriah K.*, 706 N.W.2d 257, 261 (Wis. 2005) (recognizing that failure to comply with the statutory time period in setting a fact-finding hearing within forty-five days of petition to terminate parental rights may result in the court losing "competency" [a form of subject matter jurisdiction] to proceed).

On this basis, we conclude that the alleged failures to hold the shelter care hearing and adjudicatory hearing within the statutory timeline, as well as to deliver the investigation report to Parents in a timely manner, are not jurisdictional issues that may be raised for the first time on appeal and which require reversal of the magistrate's subsequent actions.[4]

## B. Evidentiary Issues

### 1. Evidence obtained in violation of constitutional rights

Parents assert that the magistrate erred by failing to exclude all evidence gathered after the officers entered the residence because it was allegedly obtained in violation of their rights

---

[4] Also in regard to the investigation report, on appeal to the district court Parents apparently argued that the magistrate court erred in admitting and considering the evidence contained in the investigation report in determining whether it had jurisdiction over A.L. On appeal to this Court, Parents seem to reassert the issue in a heading, stating that it was "improper to consider the evidence contained [in the report]," however this assertion is not accompanied by any argument or authority and is thus waived. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997) (holding that a party waives an issue on appeal if either argument or authority is lacking).

under the Fourth Amendment protection against unreasonable searches and seizures where officers entered their home without a search warrant and under the Fifth Amendment, because evidence[5] was allegedly obtained in violation of Father's *Miranda* rights. We examine each in turn.

### a. Fourth Amendment

The magistrate denied Parents' motion to exclude the evidence[6] in regard to their Fourth Amendment claim, determining that Parents had not established that exclusion of the evidence was the appropriate remedy for an alleged Fourth Amendment violation in the context of a child protection proceeding. In the alternative, the magistrate determined that the search had not been unconstitutional, because officers had been given consent to enter Parents' home and exigent circumstances had justified their remaining in the home after entry.

The Fourth Amendment to the United States Constitution, as well as Article I, Section 17 of the Idaho Constitution, protect the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Evidence obtained in violation of the amendment generally may not be used as evidence against the victim of the illegal government action--a concept known as the exclusionary rule. *State v. Bishop*, 146 Idaho 804, 810-11, 203 P.3d 1203, 1209-10 (2009); *State v. Page*, 140 Idaho 841, 846, 103 P.3d 454, 459 (2004). *See also Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

CPA proceedings, however, are civil in nature, *Matter of X*, 110 Idaho 44, 50, 714 P.2d 13, 19 (1986), while the exclusionary rule is grounded in criminal law, *Idaho Dep't of Law Enforcement by & Through Richardson v. $34,000 U.S. Currency*, 121 Idaho 211, 214, 824 P.2d 142, 145 (Ct. App. 1991). Thus, it is not apparent that the exclusionary rule applies here--and the question of whether it does is an issue of first impression in Idaho.[7]

---

[5] Parents also do not specifically identify the evidence they contend should be suppressed under the Fifth Amendment, making reference only to an allegation that the Department used Father's silence as evidence of guilt.

[6] In identifying the evidence they contend should have been suppressed, Parents reference only "physical evidence" that was found after the officers entered the residence.

[7] Although Parents have asserted that the exclusionary rule applies under both the state and federal constitutions, on appeal they have not asserted why the analysis should be different under

We have found no cases, and Parents do not cite to any, in which any other jurisdiction has applied the exclusionary rule in the context of child abuse and neglect proceedings. In fact, other jurisdictions that have addressed the issue have consistently held that the Fourth Amendment exclusionary rule (or its state constitutional equivalent) is inapplicable in proceedings for the purpose of determining whether the transfer of custody or some other steps should be taken for the purpose of ensuring the protection of a juvenile. 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.7(e) (4th ed. 2004). The reasoning behind these jurisdictions' refusal to apply the exclusionary rule is based first on a recognition that the rule is a judicially created remedy that is not a universally applicable evidentiary mandate and second, that application of the rule may thwart the state's interest in protection of children. *See*, *e.g.*, *State ex rel. Children, Youth & Families Dep't v. Michael T.*, 172 P.3d 1287, 1290 (N.M. Ct. App. 2007) (concluding that the exclusionary rule did not apply in child abuse and neglect proceedings because the purpose of the exclusionary rule is not served in such proceedings where the focus is on the health and safety of innocent children); *In re Corey P.*, 697 N.W.2d 647, 655 (2005) (holding that the exclusionary rule is inapplicable in juvenile protection proceedings because such application "may lead to an erroneous conclusion that there has been no abuse or neglect, leaving innocent children to remain in unhealthy or compromising circumstances").

In *State ex rel. A.R. v. C.R.*, 982 P.2d 73 (Utah 1999), the Utah Supreme Court addressed the issue where the parent argued that the case was quasi-criminal in nature and thus, the exclusionary rule should apply. The court reasoned that the exclusionary rule was inapplicable in such a case because the purposes of the rule were not served, stating:

> The primary focus of and sole statutory definition for child protection proceedings is to protect the interests of children who are neglected or abused. . . . Although parents may suffer a severe detriment in losing temporary or permanent custody of their children, punishment of the parents is not the purpose of the proceeding.

*Id*. at 78. *Accord In re Christopher B.*, 82 Cal. App. 3d 608, 615 (1978) (holding that the exclusionary rule does not apply to child protection proceedings, concluding the potential harm to children in remaining in an unhealthy environment outweighs any deterrent effect that would

---

the state and federal constitutions. Thus, we will address only the federal Fourth Amendment claim. *See State v. Gomez*, 136 Idaho 480, 483 n.1, 36 P.3d 832, 835 n.1 (Ct. App. 2001).

result from suppressing evidence); *People ex rel. A.E.L.*, 181 P.3d 1186, 1192 (Colo. Ct. App. 2008) (holding that the exclusionary rule was not applicable to child protection proceedings where the societal costs of applying the rule would exceed any deterrent effect that exclusion would have on the department or the police in investigating a child welfare issue); *In re Nicholas R.*, 884 A.2d 1059, 1061 (Conn. App. Ct. 2005) (holding that the exclusionary rule did not apply to child neglect proceedings which are civil, not quasi-criminal, in nature); *Corey P.*, 697 N.W.2d at 655 (holding that any possible benefits of the exclusionary rule do not justify the costly result in a juvenile proceeding of a possible erroneous conclusion that there has been no abuse or neglect, leaving innocent children in unhealthy or compromising circumstances); *In re Diane P.*, 494 N.Y.S.2d 881, 884 (1985) (concluding that the state's interest in protecting and promoting the best interests and safety of children far outweighs the exclusionary rule's deterrent value); *State ex rel. Dep't of Human Services v. W.L.P.*, 202 P.3d 167, 173 (Or. 2009) (holding that neither the Oregon Constitution nor the federal constitutional required the exclusionary rule to be applied to juvenile dependency proceedings).

We agree with the reasoning of these cases. The interests at stake in child protective proceedings are simply not the same as the liberty interest at stake in criminal prosecutions, and the purpose of the exclusionary rule is not served in abuse and neglect proceedings where the state has an overwhelming interest in the protection of children. As such, we conclude that the exclusionary rule does not apply to CPA proceedings.

### b.     Fifth Amendment

Parents also argue that the magistrate erred in failing to exclude evidence obtained after Father indicated that he no longer wished to respond to police questioning while the officers were in his residence. Parents assert that such evidence was obtained in violation of Father's *Miranda*[8] rights under the Fifth Amendment.

In rejecting Parents' Fifth Amendment claim, the magistrate determined that the exclusionary rule was inapplicable to child protection cases, and in any case, no evidence with regard to the alleged statements made by Father after his invocation of his right to remain silent was presented--thus, there was no evidence to exclude, even if the court had determined that

---

[8]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

such action was appropriate. On intermediate appeal, the district court affirmed the magistrate, concluding that Parents had not identified any authority for their claim that the alleged *Miranda* violation required exclusion of evidence in a CPA proceeding. In addition, the district court concluded that Parents had not identified any statements elicited from Father in violation of his Fifth Amendment rights and did not establish that Father was "in custody" at the time he made such statements, as is required to invoke *Miranda* protections.

We need not reach the merits of this argument, because Parents fail to identify the evidence they assert was allegedly elicited from Father in violation of his Fifth Amendment rights and should have been excluded at the adjudicatory hearing. A general attack on the findings and conclusions of a trial court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. *Dawson v. Cheyovich Family Trust*, 149 Idaho 375, 383, 234 P.3d 699, 707 (2010). This Court will not search the record on appeal for error. *Id.*; *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003). Consequently, to the extent that an assignment of error is not argued and supported in compliance with the Idaho Appellate Rules, it is deemed to be waived. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005).

### 2. *Brady* violation

Parents contend that the Department violated their Fourteenth Amendment right to due process, as set forth in *Brady*, 373 U.S. 83, by failing to disclose all material exculpatory and inculpatory evidence prior to the adjudicatory hearing.

Under *Brady*, the prosecution is bound to disclose to the defense all exculpatory evidence known to the state or in its possession. The duty to disclose encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Grube v. State*, 134 Idaho 24, 27, 995 P.2d 794, 797 (2000). To prove a *Brady* violation, three components must be shown: the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the state, either willfully or inadvertently; and prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *State v. Shackelford*, ___ Idaho ___, ___, ___ P.3d ___, ___ (June 1, 2010). Thus, a new trial is not automatically required whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. *Giglio v. United States*, 405 U.S. 150, 154 (1972);

13

*Shackelford*, ___ Idaho at ___, ___ P.3d at ___. Instead, the U.S. Supreme Court has held that regardless of whether requested, favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *Bagley*, 473 U.S. at 682). A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678).

While this issue does not appear to have been raised before the magistrate, the district court addressed the issue on appeal, denying Parents' claim in this regard upon concluding that Parents had not identified any evidence that was either favorable to them or material to their case that the state had failed to disclose. Thus, the court concluded, even if it were to decide that the *Brady* rule applied to the proceeding (a proposition for which Parents had not cited any authority) they had not "provided any basis for the court to accord them relief on appeal."

Whether *Brady* applies to CPA proceedings is an issue of first impression in Idaho. In looking to other jurisdictions, we perceive the case law is unsettled--we were unable to locate any cases which analyzed whether *Brady* applies (and Parents do not cite to any), although we located some cases where courts *assumed* that it applied. *See*, *e.g.*, *In re MM*, 202 P.3d 409, 415 (Wyo. 2009). However, we need not decide the issue either, because even assuming that the *Brady* requirements apply to CPA proceedings, Parents have not presented evidence such that any relief is required.

On appeal, Parents list several forms of evidence which they allege were not disclosed to them--the photographs taken but not admitted at trial, audio recordings of the investigation, the report of Officer Eller which was not given to Parents until the middle of the first day of the adjudicatory hearing, and the written report of Officer Bromley. However, in regard to all of this evidence, Parents merely speculate that the evidence "may" have been "exculpatory" or "useful." However, as we indicated above, to prevail on a *Brady* claim, a party must demonstrate that the evidence was favorable, that it was suppressed by the state, and that prejudice resulted. Parents have proven none of these here, and we will not assume error on the part of the trial court. *Fritts v. Liddle & Moeller Constr.*, *Inc.*, 144 Idaho 171, 173, 158 P.3d 947, 949 (2007) (holding that

14

the Court would not assume error on appeal, rather the party assigning error must *affirmatively* show it).  Thus, we conclude that Parents' assertion of a *Brady* violation is without merit.

### 3.     Admission of photographs

Parents claim the magistrate erred in admitting certain photographs of the older children's injuries that were offered by the Department during the jurisdictional phase of the adjudicatory hearing.  Specifically, Parents claim that the photos are not "originals" pursuant to Idaho Rules of Evidence 1001(3) and 1002, are not admissible as duplicates under I.R.E. 1003, and should have been excluded under I.R.E. 403 because their prejudicial effect outweighs their probative value.

This Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard.  *Vreeken v. Lockwood Eng'g*, *B.V.*, 148 Idaho 89, 106, 218 P.3d 1150, 1167 (2009); *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 50, 995 P.2d 816, 820 (2000).  These include challenges to a trial court's decision to admit or exclude documentary and/or testimonial evidence.  Error is disregarded unless the ruling is a manifest abuse of the trial court's discretion and affects a substantial right of the party.  *Vreeken*, 148 Idaho at 106, 218 P.3d at 1167; *Perry*, 134 Idaho at 51, 995 P.2d at 821.  To determine if there has been an abuse of discretion, this Court applies the following three factors:  (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the boundaries of this discretion and consistent with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason.  *City of McCall v. Seubert*, 142 Idaho 580, 586, 130 P.3d 1118, 1124 (2006).

Pursuant to I.R.E. 1002, an original photograph is required to prove the content of a photograph, unless the rules or statute provide otherwise.  Under I.R.E. 1001(3), prints of digital images are admissible as "originals," if they are shown to reflect the data "accurately."  I.R.E. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice.

At the adjudicatory hearing, the magistrate admitted into evidence several photographs produced from data downloaded from a camera to a computer system and printed out at the police station.  In seeking to have them admitted, the state and the guardian ad litem introduced foundational testimony by the officers who took the pictures, who testified that the prints accurately depicted the injuries to the children at the time the pictures were taken.  Parents

objected to admission of the prints, asserting that they did not reflect the data in an accurate manner and that their prejudicial effect outweighed their probative value. In aid of their objection, Parents presented testimony from an expert witness who testified that the colors of the prints were not "neutrally balanced" and reflected color biases toward red and yellow hues. Parents argued that such color abnormalities made the pictures inaccurate representations of the injuries--specifically that they made the injuries appear worse than they were.

In deciding to admit the prints, the magistrate stated:

> . . . the expert today has testified that the color saturation in these photos may have made the red colorings in these photos more intense than they may have appeared to be naturally. And frankly, through [other] testimony, I can tell that the printer's left lines within various areas of the photos that they wouldn't be.
> What the photos do depict are the injuries that the officers observed. We used to in trials always have black and white photos because you might inflame the prejudice of the jury and at the time when that was going on, we also had rulings right and left that, however, if it was in front of a judge, it wouldn't matter because they could somehow keep themselves from being overly impressed by the imagery of color photography.
> These photos are admitted and demonstrated to depict the wounds that have been adequately described [by] the witnesses as being accurate the night they were taken and the Court would note that regarding the red tone in the photos that goes to the weight of the exhibit.
> . . . .
> The witnesses have clearly testified about the raised welts that they saw and I'm satisfied that their probative value does not outweigh their prejudicial effect. It's being tried by a judge; not by a jury.

In affirming the magistrate on intermediate appeal, the district court found that the magistrate had not abused its discretion in admitting the prints as original photographs where it found by exercise of reason and application of the correct standards that the prints accurately reflected the injuries and that their probative value was not outweighed by unfair prejudice.

We conclude that the magistrate did not err in admitting the photographs into evidence as "originals." The court recognized that while the photos may have been somewhat discolored, such distortion went to the weight of the evidence and did not automatically render the photos inaccurate. This Court took a similar approach in *State v. Curry*, 103 Idaho 332, 339, 647 P.2d 788, 795 (Ct. App. 1982), where an expert admitted on cross-examination that the color or shade of an object in a photograph the state wished to admit may have been inaccurately depicted depending on how the development process was carried out. We concluded that testimony in

this regard went to the weight of the evidence--thus inferring that its admissibility was not affected. *Id.*[9] We also conclude that the magistrate did not err in rejecting Parents' position that the prejudicial effect of the photographs outweighed their probative value under I.R.E. 403. The trial court considered both relevance and potential prejudice before admitting the evidence. We see no abuse of discretion in the court's determination.

## C.    Evidence Establishing Jurisdiction Over A.L.

Parents also assert that the magistrate's determination that the children were within the court's jurisdiction under the CPA pursuant to I.C. § 16-1603(1)(a) was not supported by a preponderance of the evidence. As we indicated above, however, the issue is moot as to the two younger children and thus we address the correctness of the district court's decision only as to A.L.

As previously noted above, we examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Losser*, 145 Idaho at 672, 183 P.3d at 760. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

Idaho Code § 16-1603(1)(a) provides that the court shall have exclusive original jurisdiction in all proceedings under the CPA concerning any child living or found within the state who is neglected, abandoned, or abused by his parents. For the purposes of this section, a child is considered "abused" where he or she has been the victim of:

> Conduct or omission resulting in skin bruising, bleeding, malnutrition, burns, fracture of any bone, subdural hematoma, soft tissue swelling, failure to thrive or death, and such condition or death is not justifiably explained, or where the history given concerning such condition or death is at variance with the degree or type of such condition or death, or the circumstances indicate that such condition or death may not be the product of an accidental occurrence.

I.C. § 16-1602(1)(a). Pursuant to I.C. § 16-1619(4), such a finding must be supported by a preponderance of the evidence.

---

[9]    Since we affirm the district court's decision affirming the magistrate court's admission of the photographs as "originals," we need not address Parents' contention that the photos were also inadmissible as "copies" under I.R.E. 1003.

In concluding that the two older children fell within the purview of the CPA, the magistrate found:

> They suffered abuse at the hands of [Father] and that is in the nature of spanking with a broom and a dowel which left welts described by the witnesses in this case which are beyond what the Court would consider to be reasonable spanking, especially due to the age of the children.
> What I'm not saying is that it's illegal to spank a child. What I am saying is that it is--that it is within purview of a child protection case when the extent of the injuries occur here and I find that by preponderance of the evidence.

On appeal, Parents argue that the evidence did not demonstrate that A.L.'s injuries were not "justifiably explained." Specially, they argue that the Department had not "disprove[d]" Parents' "proffered explanation justifying the marks"--namely that the children had been spanked for "speaking inappropriately about [their] mother" as well as ongoing issues "throughout the day" including "insubordination" and "refusing to comply with simple instructions."

Parents' contention in this regard is without merit to the extent that they interpret the statute as automatically excluding physical injuries from the definition of "abuse" if the perpetrator simply provides an explanation--any explanation--for the injuries. Such an interpretation ignores the inclusion of the word "justifiably" in the statute. *See Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009) (noting that when interpreting a statute, a court must begin with the literal words of the statute and those words must be given their plain, usual, and ordinary meaning and the statute must be construed as a whole). As defined in Black's Law Dictionary, "justifiable" means "[c]apable of being legally or morally justified; excusable; defensible." BLACK'S LAW DICTIONARY 870 (7th ed. 1999). Thus, the plain meaning of the statute is that not only must there be an explanation for the injury, but that explanation must essentially excuse the imposition of such injuries. Simply providing an explanation is not sufficient. Thus, we reject Parents' contention that because they provided an explanation for the injuries, there was insufficient evidence for the magistrate to determine that A.L. was "abused." The magistrate was free to determine that Parents' explanation did not "justifiably" explain A.L.'s injuries in light of the testimony regarding her injuries and the photographic evidence depicting them. Accordingly, there was sufficient evidence presented allowing the magistrate to find that A.L. was within the court's jurisdiction under the CPA.

## III.

## CONCLUSION

The magistrate's failure to hold a timely shelter care hearing and adjudicatory hearing, as well as the Department's failure to timely disclose the investigation report, did not operate to divest the magistrate of jurisdiction under the CPA. In addition, we do not find merit in any of Parents' evidentiary contentions--specifically, we conclude that the Fourth Amendment's exclusionary rule does not apply to child protection proceedings; that Parents failed to show a violation of Father's Fifth Amendment *Miranda* rights; that even if we were to apply *Brady* to CPA proceedings, Parents have not demonstrated that the undisclosed evidence was favorable, suppressed by the Department, and prejudice resulted; and that the magistrate did not err in admitting photographs of the older children's injuries. Finally, we conclude that that magistrate did not err in concluding that based on the circumstances, there was evidence of abuse to establish the court's jurisdiction over A.L. under the CPA.

Judge GRATTON and Judge MELANSON **CONCUR.**