**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39139**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Opinion No. 43 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 12, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JESSE ELIAS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for forcible penetration by use of a foreign object, <u>vacated</u>.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant. Jason C. Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

_____

PERRY, Judge Pro Tem

Jesse Elias appeals from his judgment of conviction for forcible penetration by use of a foreign object.[1] Specifically, Elias asserts the State has failed to present sufficient evidence to support his conviction because the act was committed while the victim was asleep, which he claims is not prohibited by the statute under which he was prosecuted. For the reasons set forth below, we vacate the judgment.

**I.**

**FACTS AND PROCEDURE**

Evidence adduced at trial showed that the victim and Elias were acquaintances. Elias had been a guest in the victim's home prior to the crime, but he did not have permission to enter the

_____

[1] Elias was convicted of burglary as well, but he does not challenge that conviction or sentence in this appeal.

1

residence without first asking. On the night of the crime, Elias entered the victim's home and then her bedroom where she was sleeping with her two small children lying next to her. The victim slept in only a t-shirt and awoke around 3:30 a.m. because Elias had his fingers inside of her vagina. She rolled over onto her side and felt a razor-cut-like burning in her vagina. Her rolling over had caused Elias's hand to move. Elias then again touched her, though he did not accomplish penetration. The victim wrapped herself in a blanket. Although Elias attempted a third time to touch the victim, the blanket prevented him from being able to do so. Elias repeatedly asked the victim if she knew who he was. After the victim identified him, Elias asked if the victim wanted him to leave. She said she did, and after Elias left her bedroom, she immediately called both a friend and the police to report what had just occurred. A subsequent medical examination revealed that the victim had an abrasion on her inner labia, consistent with the insertion of a finger or other object. Police officers later located and arrested Elias.

After being charged by criminal complaint with burglary and forcible penetration by use of a foreign object, Elias waived his preliminary hearing and was bound over to district court. He pled not guilty and exercised his right to trial. The jury found Elias guilty on both charges. Elias appeals, arguing there is insufficient evidence to show that he committed forcible penetration by use of a foreign object as defined in Idaho Code § 18-6608 because the act occurred while the victim was sleeping, which he asserts is not a means by which an individual can violate the statute.

## II.

## STANDARD OF REVIEW

The standard of review for sufficiency of the evidence for a judgment of conviction entered upon a jury verdict is whether there was substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Hoyle*, 140 Idaho 679, 684, 99 P.3d 1069, 1074 (2004); *State v. Curry*, 153 Idaho 394, 396, 283 P.3d 141, 143 (Ct. App. 2012); *State v. Lawyer*, 150 Idaho 170, 172, 244 P.3d 1256, 1258 (Ct. App. 2010). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Lawyer*, 150 Idaho at 172, 244 P.3d at 1258. Moreover, we consider the evidence in the light most favorable to the prosecution. *Curry*, 153 Idaho at 396-97, 283 P.3d at 143-44; *Lawyer*, 150 Idaho at 172, 244

2

P.3d at 1258; *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998). If we determine the evidence is insufficient, the defendant is entitled to acquittal. *See Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101.

## III.

## ANALYSIS

Idaho Code § 18-6608, criminalizing forcible penetration by use of a foreign object, defines the offense as follows:

> Every person who, for the purpose of sexual arousal, gratification or abuse, causes the penetration, however slight, of the genital or anal opening of another person, by any object, instrument or device, against the victim's will by use of force or violence or by duress, or by threats of immediate and great bodily harm, accompanied by apparent power of execution, or where the victim is incapable, through any unsoundness of mind, whether temporary or permanent, of giving legal consent, or where the victim is prevented from resistance by any intoxicating, narcotic or anesthetic substance, shall be guilty of a felony and shall be punished by imprisonment in the state prison for not more than life.

Elias asserts the statute sets out three means by which a person can commit the crime: by the use of force or threat of force; where the victim is incapable of giving lawful consent due to unsoundness of mind; and where the victim is prevented from resisting due to an intoxicating, narcotic, or anesthetic substance. He argues that a comparison with the rape statutes, where penetration of a person who is at the time unconscious of the act (*i.e.* sleeping) is specifically prohibited, shows the legislature omitted language from section 18-6608 that would make committing the act when the victim is asleep unlawful. Therefore, Elias argues that he could not have violated section 18-6608. Given the facts presented in this case and the statute as written, Elias argues there is no evidence supporting a finding that his conduct involved the use of force, that the victim suffered from any unsoundness of mind--which, as defined, does not include being asleep--or that the victim was under the influence of an intoxicating, narcotic, or anesthetic substance.

Elias's stance rests on his argued interpretation of section 18-6608. This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain,

3

obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation that will not render it a nullity. *Id*. Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

The amended information charged Elias with forcible penetration by use of a foreign object for purposes of sexual arousal or gratification "against [the victim's] will by use of force or where [the victim] was unable to give consent due to temporary unsoundness of mind . . . ." We first address whether there was sufficient evidence to sustain Elias's conviction through proof that the act was accomplished against the victim's will by the use of force.

## A.     The Use of Force within Idaho Code § 18-6608

Elias makes two arguments in support of his contention that he did not use force in committing the act of digital penetration. First, Elias points out that in the rape and male rape statutes, the legislature explicitly criminalizes penetration where the victim is, at the time, unconscious of the nature of the act. I.C. §§ 18-6101(6), 18-6108(7). As defined, "unconscious of the nature of the act" includes the victim being unconscious or asleep. I.C. § 18-6101(6). Because this condition is listed *in addition to* the use of force or threat of force in the rape statutes, *see* I.C. §§ 18-6101(4) and (5), 18-6108(4), Elias argues that when read in *pari materia*[2] with section 18-6608, *force* within the meaning of the latter statute cannot be read to prohibit penetration while a victim is unconscious or asleep. Rather, he asserts the legislature purposely omitted such language. Second, Elias asserts the "quantum of force must be of a particular nature--it must be that which overcomes a victim's will." Elias supports this assertion by stating

---

[2]     Statues are in *pari materia* if they are of the same subject matter and are to be construed together so as to further legislative intent. *State v. Evans*, 134 Idaho 560, 564, 6 P.3d 416, 420 (Ct. App. 2000).

4

that when reading the elements of the statute together, which include both that the act was against the victim's will *and* was accomplished by the use of force or violence, "it is apparent that the quantum of force required to sustain a conviction for forcible penetration by a foreign object must be in some appreciable degree greater than that which is merely inherent in, or incidental to, the act of penetration." In arguing that the force used was no greater than that inherent in penetration, Elias does not contest that the act was against the will of the victim; he only argues that any acts prior to the actual violation of the victim cannot be taken into consideration because the victim was sleeping. He further reasons that, because physical injury can occur with a consensual act, the facts that the victim felt pain--which awoke her--and suffered an abrasion are still insufficient to show any additional use of force.

In reading the statute, there are three alternative ways to commit the crime of forcible penetration by use of a foreign object: (1) against the will of the victim and accomplished by (a) the use of force or violence, (b) duress, or (c) threats of immediate and great bodily harm, accompanied by the apparent power to inflict such harm; (2) where the victim was incapable, through any unsoundness of mind, either temporary or permanent, of giving legal consent; or (3) where the victim was prevented from resistance by an intoxicating, narcotic, or anesthetic substance. *See* Idaho Criminal Jury Instruction (ICJI) 921. This statute, as charged under the first alternative, requires penetration that is against the will of the victim and is accomplished by "the use of force or violence." I.C. § 18-6608. *Force* is not defined in section 18-6608, elsewhere in the chapter where that statute is found, or in the model jury instructions for section 18-6608. *See* I.C. §§ 18-6601−18-6609; ICJI 921. Although our appellate courts have not interpreted the meaning of force within section 18-6608, we have defined it in the context of rape.

Akin to section 18-6608, a defendant is guilty of forcible rape if he accomplishes penetration of the victim where "she resists but her resistance is overcome by *force or violence*." I.C. § 18-6101(4) (emphasis added). There are generally two approaches as to what constitutes *force* within a rape statute: the extrinsic force standard requires force beyond that inherent in the act itself; the intrinsic force standard holds that the force necessary to accomplish penetration is itself sufficient. *State v. Jones*, 154 Idaho 412, 421, 299 P.3d 219, 228 (2013). In examining which standard applies to Idaho's rape statute, the Idaho Supreme Court stated, "[I]f a forcible rape statute by definition requires penetration, then for an additional requirement of force to be

5

meaningful, it necessarily must mean some force beyond that inherent in penetration." *Id.* As penetration is, by definition, required under any charge of rape,[3] the Supreme Court concluded the extrinsic force standard applied to a charge under section 18-6101(4) based on the plain language and so as not to render the force element a nullity. *Jones*, 154 Idaho at 422, 299 P.3d at 229.[4] In other words, "some force beyond that which is inherent in the sexual act is required for a charge of forcible rape." *Id.*

We agree with Elias that the rape statute and section 18-6608 should be read in *pari materia* because the alternative ways of committing forcible penetration closely imitate the alternative ways of committing rape in subsections (3)-(5) of section 18-6101. Interpreting the statutes as such, we are constrained to apply the Supreme Court's adoption of the extrinsic force standard to section 18-6608. As with the forcible rape statute, section 18-6608 requires *both* an act that is against the will of the victim *and* the use of force; therefore, the force inherent in the penetration itself cannot be sufficient to uphold a conviction. Were it otherwise, the force element would be nullified.

---

[3]     The Idaho rape statute reads, in part, as follows:

> Rape is defined as the penetration, however slight, of the oral, anal or vaginal opening with the perpetrator's penis accomplished with a female under any one (1) of the following circumstances:
>
> . . . .
>
> (3) Where she is incapable, through any unsoundness of mind, due to any cause including, but not limited to, mental illness, mental disability or developmental disability, whether temporary or permanent, of giving legal consent.
>
> (4) Where she resists but her resistance is overcome by force or violence.
>
> (5) Where she is prevented from resistance by the infliction, attempted infliction, or threatened infliction of bodily harm, accompanied by apparent power of execution; or is unable to resist due to any intoxicating, narcotic, or anesthetic substance.

I.C. § 18-6101.

[4]     In *State v. Jones*, 154 Idaho 412, 421, 299 P.3d 219, 228 (2013), the Supreme Court referenced the statutory section as Idaho Code § 18-6101(3), as that was the version of forcible rape in effect at the time Jones was charged. The forcible rape statute has since been amended and is now codified as Idaho Code § 18-6101(4). 2010 Idaho Sess. Laws ch. 352 § 1.

The State argues the extrinsic force standard should not apply to section 18-6608 because it is distinguishable from the forcible rape statute: The latter statute has the additional element of resistance and the quantum of force necessary is that which "overcome[s]" the victim's resistance. I.C. § 18-6101(4). Therefore, the State, in essence, argues the resistance element necessitates that the extrinsic force standard applies to the forcible rape statute. The State asserts that applying the same standard to section 18-6608 would effectively add in the element of resistance, which the State is not required to prove in a forcible penetration charge.

We are not persuaded. We reject the contention that section 18-6608 is wholly distinguishable from the rape statutes or that we are adding the element of resistance to a charge under section 18-6608 by applying the extrinsic force standard. The Idaho Legislature omitted the resistance requirement in enacting section 18-6608, but included the element of the victim's nonconsent. Thus, with or without the application of the extrinsic force standard, the State must prove the act was "against the victim's will" *and* force was used. I.C. § 18-6608. The State need not prove force sufficient to overcome the victim's resistance as in rape cases (nor show her resistance at all), but it still must prove some degree of force in addition to showing that the act was against the victim's will.

The extrinsic force standard was found applicable to the forcible rape statute not because force must overcome a victim's resistance under that statute, but rather because both *penetration* and *force* must be proven. As the Supreme Court said in *Jones*, to hold that the penetration is inherently force under such a statute would extinguish the force element. In section 18-6608, we recognize, in the same vein, that both *penetration* and *force* are necessary to sustain a conviction and, therefore, the extrinsic force standard must apply.[5]

---

[5] In this light, we also cannot adopt a meaning of force in section 18-6608 similar to the use of force in the battery statute, as the State urges. Our battery statute defines that crime as any "willful and unlawful use of *force or violence* upon the person of another." I.C. § 18-903(a) (emphasis added). The force used upon the victim is, in and of itself, the battery. There is no additional element beyond the use of force in the battery statute as there is in the forcible penetration statute. We do, however, note a foreseeable problem in the wording of the forcible penetration statute and the application of the extrinsic force standard as a result. Under the extrinsic force standard, the force used must necessarily be, to some degree, greater than that inherent in the act of penetration itself in order to constitute a criminal act. This does not take into account the nature of the crime of forcible penetration and a key difference between it and the crime of rape. Rape is defined as the penetration of an oral, anal, or vaginal opening *only* by the perpetrator's penis. I.C. §§ 18-6101, 18-6108. In contrast, penetration under

7

In looking at what actions constitute extrinsic force, it is clear that there need not be significant impositions of force beyond that necessary to accomplish penetration. In *Jones*, the victim lay prone on a bed just prior to the violation. In committing the act of rape, the defendant leaned forward to where the weight of his body pinned the victim's arms underneath her and she could not get up or turn around. The evidence that the defendant used his body to trap the victim and forestall any struggle was sufficient to find that the defendant used force to overcome the victim's verbal resistance. *Jones*, 154 Idaho at 422, 299 P.3d at 229. In an earlier case, the defendant entered the victim's unlocked apartment while she slept, unclothed himself, and got into her bed with her. *State v. Robran*, 119 Idaho 285, 286, 805 P.2d 491, 492 (Ct. App. 1991). In the dark, the victim believed the defendant to be her boyfriend at first, but soon realized it was a stranger. When she did, she tried to jump back, but the defendant held her arm, laid her on her back, and told her to be quiet. He then proceeded to have intercourse with her. Following the intercourse, the victim and the defendant spoke briefly and then the defendant dressed and left. The defendant was charged with rape under alternate theories that the victim resisted and her resistance was overcome by force, or that the victim was prevented from resisting due to threats of harm. In concluding the evidence was sufficient to uphold a conviction under either theory alleged, we rejected the proposition that the circumstance created by the defendant constituted no "threat" to the victim. *Id*. at 289, 805 P.2d at 495. Although decided prior to the explicit adoption of the extrinsic force standard in *Jones*, *Robran* also shows that sufficient force need only be an appreciably greater degree of force above and beyond that inherent in the act of penetration and is necessarily a function of the facts and circumstance of each case.

The evidence in this case adduced at trial showed the victim and Elias were acquainted. The victim testified she met Elias through her neighbor and there were a few occasions that Elias and she had spent time with friends in the backyard of the triplex in which she lived or in either her or her neighbor's house. However, she testified that Elias was never alone with her in her

---

section 18-6608 can occur with *any* foreign object and different objects may require varying levels of force to complete the act of penetration. Consequently, to accomplish penetration of a large object may require significant amounts of force but, arguably, would only amount to force necessary to complete the act and nothing greater, meaning no "extrinsic" force was used. If the forcible penetration statute read more like the battery statute (dispensing of the additional force requirement and simply requiring penetration without consent), this concern may be alleviated.

house and the two had never engaged in any romantic or physical relationship. Moreover, she testified that he did not have permission to enter her residence, she always kept the front door locked, and each night she locked the back sliding door and placed a board in the frame so as to make it more difficult to open. On the night of the crime, the victim slept in her bed with her two young children lying next to her. She woke up at 3:30 a.m. to Elias sitting on the end of her bed with his fingers in her vagina. She said she felt pain associated with the penetration as she rolled over onto her side. Elias's hand withdrew as the victim rolled to her side and Elias again attempted to touch her, though he did not accomplish penetration. The victim then wrapped herself into a blanket and, in doing so, prevented Elias from touching her a third time. She testified that at least three times, Elias asked, "Do you know who I am?" It was dark in the victim's room, but the light from her television allowed her to see Elias's outline and she eventually recognized who he was because of his voice. After he asked the third time, the victim testified that she acknowledged to Elias that she did know him. Elias asked whether she wanted him to leave. The victim said she did, and thereafter, Elias got up and walked into her bathroom and eventually left the house. The victim immediately called a friend of hers and he stayed on the phone with her while she also called the police.

The patrol officer who responded to the call also testified. He described the victim as visibly upset and it seemed as though she was in shock. He also testified about his investigation of her residence after he spoke with the victim. When the patrol officer arrived at the residence, the back sliding door was unlocked and slightly ajar. He also noted that the lock mechanism had damage to it consistent with being forced open or pulled open and that the board, which the victim had testified she placed in the sliding frame, was lying next to the door on the floor.

The victim underwent a medical examination in the evening after the crime occurred. The emergency room doctor who conducted the examination testified as to his conversation with the victim and an injury to her vaginal area. The account of the crime to the doctor was consistent with the account the victim gave to the police. The doctor also testified that the examination revealed that the victim had an abrasion on the right side of her labium inside the inner lips, roughly three centimeters in length. Such an injury could be caused by the insertion of a finger or other such object.

As previously noted, whether requisite force was used is determined on a case-by-case basis dependent on the totality of the circumstances. In this case, it is undisputed that the victim

awoke after penetration occurred. The State argues that the surrounding circumstances are a factor in whether Elias used force to accomplish the act. The State relies on evidence of Elias's entry into the home and expert testimony indicating that penetration of the victim would have occurred while her legs were closed, based on the placement and type of injury she incurred. The State further points out that the victim felt pain. Elias argues any prior conduct cannot be taken into account in determining whether he used force because the victim was asleep. He further argues that because physical injury can occur with consensual penetration, the evidence that the victim felt pain--which awoke her--and suffered an abrasion is still insufficient to show any additional use of force beyond that inherent in digital penetration.

We agree with Elias that, even accepting the State's version of the evidence, the surrounding circumstances here do not constitute force within the meaning of section 18-6608. Here, Elias did not have a weapon, did not verbally threaten the victim, and did not act violently. He approached the victim in her bedroom, at night, where she lay with her two young children on either side of her, and sat directly below her feet. Elias used the unlawful entry while she slept and her vulnerability to accomplish the act of penetration, but we are unconvinced this constitutes the type of "force" the *Jones* Court would find sufficient under the extrinsic force standard.

Moreover, the threat of harm, with the apparent power of execution, is a means of charging the crime apart from the "use of force or violence," but was not alleged in this case. In the rape statute, the use of "force or violence" is also a separate means of committing the crime from where the victim is prevented from resisting due to threats. As using threats is a separate means of committing either crime, we decline to hold that the surrounding circumstances, which do not constitute the requisite threat, can be held to constitute force under the theory charged by the State.

Lastly, the rape statute explicitly includes the circumstance of the crime in this case--were it to be a case of rape rather than digital penetration. Section 18-6101 specifically provides that rape is committed:

> (6) Where [the victim] is at the time unconscious of the nature of the act. As used in this section, "unconscious of the nature of the act" means incapable of resisting because the victim meets one (1) of the following conditions:
> (a) Was unconscious or asleep;
> (b) Was not aware, knowing, perceiving, or cognizant that the act occurred.

10

Thus, where the State Legislature has intended to criminalize the act of penetration while the victim was asleep, it specifically included such a reference. Setting out this means of committing the crime, separate and apart from the use of force, shows that the Legislature did not intend for force to include penetrating a victim while she is unconscious or asleep. Section 18-6608 is left with the glaring absence of such language. In order to uphold a conviction under section 18-6608 with facts such as are presented here, this Court must either dispense of the force requirement, finding penetration with an object occurring against the will of the victim is sufficient to constitute criminal conduct, or add in language similar to that found in the rape statutes, but missing from section 18-6608. It is the province of the Legislature to amend the statute to cover the circumstances of this case and not within the power of this Court. The victim endured an unconsented to and initially unperceived violation of her body while she slept and thereafter awoke and the conduct ceased. Such behavior by a defendant is deplorable and blameworthy, but under the statute as written and charged, not violative of section 18-6608. No penetration occurred after the victim was cognizant and, although Elias created threatening circumstances, the evidence is insufficient to show that Elias accomplished the act by the use of force.

## B.      Temporary Unsoundness of Mind

Elias argues that the evidence is insufficient to uphold a conviction under the theory that the victim was unable to give consent due to temporary unsoundness of mind. Based on this Courts' interpretation of "unsoundness of mind," Elias asserts it cannot be construed to cover the circumstance where the victim is asleep.[6]

This Court has previously interpreted the meaning of "unsoundness of mind" in the context of the rape statute. *See State v. Doe*, 137 Idaho 691, 52 P.3d 335 (Ct. App. 2002). In *Doe*, we applied the rule of statutory construction and concluded that "unsoundness of mind," as used in the rape statute, refers to "mental disability caused by mental illness, retardation or other abnormality." *Id.* at 693, 52 P.3d at 337. We relied on the plain meaning of the term "unsound" as not physically healthy or whole or having disease, abnormality, or defect such that usefulness is impaired. *Id.* Under any interpretation of the term, we cannot find that being asleep fits within the plain meaning of "unsoundness of mind." As there is no other evidence showing a

---

[6]      The State did not brief or argue this issue.

mental disability or abnormality on the part of the victim in this case, the evidence is insufficient to uphold the conviction under the second theory alleged by the State.

## IV.

## CONCLUSION

We conclude the evidence was insufficient to support a verdict finding Elias guilty of forcible penetration by use of a foreign object under either theory charged by the State. Accordingly, we vacate the judgment of conviction.

Judge LANSING and Judge GRATTON **CONCUR.**