**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44441**

| | | |
|---|---|---|
| In the Matter of the DOE CHILDREN, Children Under the Age of 18 Years. | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) | 2017 Opinion No. 10 |
| | ) | Filed: February 6, 2017 |
| Petitioner-Respondent, | ) ) | Stephen W. Kenyon, Clerk |
| v. | ) ) | |
| JANE DOE (2016-35), | ) ) | |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Bryan K. Murray, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Randall D. Schulthies, Bannock County Public Defender; Sara C. Archibald, Deputy Public Defender, Pocatello, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Seamons, Deputy Attorney General, Pocatello, for respondent.

_____

MELANSON, Judge

Jane Doe appeals from a judgment terminating her parental rights. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Doe has a significant history of using numerous intoxicants, including alcohol, marijuana, and methamphetamine. On May 9, 2015, Doe appeared at her neighbor's house intoxicated and

1

left her two youngest children[1] with the neighbor indicating Doe could not care for the children's needs. On May 11, police took Doe into protective custody when she appeared to be disoriented and possibly hallucinating. Doe disclosed that she had recently used methamphetamine. The Department of Health and Welfare declared Doe's two children in imminent danger and they were placed in foster care. A petition under the Child Protective Act was filed on May 12. The children were placed into the legal custody of the Department and a guardian ad litem for the children was appointed. A case plan was developed to address Doe's substance abuse, employment, mental health, and parenting in order for Doe to acquire the necessary skills to care for and reunite her with her children. On May 25, 2016, the Department filed a petition for termination of Doe's parental rights. Two days later, police arrested and charged Doe with various crimes after an intoxicated Doe unlawfully entered a stranger's home. The criminal charges were later dismissed. Doe filed a motion in limine to exclude testimony from the resident concerning circumstances related to the dismissed criminal charges, which the magistrate denied. During the termination hearing, the Department presented testimony and exhibits recounting Doe's failures to comply with the terms of her case plan. Following the hearing, the magistrate made findings of fact and conclusions of law, finding clear and convincing evidence that Doe had neglected and abandoned the children and that termination was in their best interests. An amended judgment terminating doe's parental rights was entered on September 14, 2016. Doe appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of

---

[1]     The record indicates that Doe had two other older children, but she had lost custody of them in a previous action. Doe's parental rights regarding the two older children are not at issue here.

2

due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). *See also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

### A. Motion in Limine

Doe argues that the magistrate erred in denying Doe's motion in limine and allowing the resident to testify at the termination hearing concerning an incident in which Doe's behavior resulted in criminal charges. Specifically, Doe contends that allowing the resident to testify concerning dismissed criminal charges was more prejudicial than probative. Doe asserts that the criminal charges were not relevant to the termination proceedings because the children were not in Doe's custody at the time of the incident.

Two days following the Department's filing of the petition to terminate Doe's parental rights, an intoxicated Doe appeared at a stranger's home. Doe began interacting with children outside the resident's home and, without consent, entered the resident's home multiple times. Doe appeared to be out of control and was asked to leave. At some point during the incident, Doe grabbed the resident's child by the face and later ingested prescription medication Doe found in the resident's home. The police placed Doe under arrest and charged her with multiple crimes. These charges were later dismissed. Doe filed a motion in limine seeking to exclude all testimony of the resident. Doe argued that the criminal charges had been dismissed and such testimony would be irrelevant and unduly prejudicial. Objecting to Doe's motion in limine, the guardian ad litem argued that the resident's testimony was relevant to Doe's substance abuse and that the resident's testimony would be based on his observations of Doe's specific actions and behaviors, not the resulting criminal charges. The magistrate denied Doe's motion in limine and concluded the resident's testimony was relevant to the termination proceedings.

The Idaho Rules of Evidence apply in parental rights termination proceedings. Idaho Juvenile Rule 48(b); *Idaho Dep't of Health and Welfare v. Doe III*, 150 Idaho 752, 765 n.11, 250 P.3d 803, 816 n.11 (Ct. App. 2011). This Court reviews challenges to a trial court's evidentiary rulings under the abuse of discretion standard. *Idaho Dep't of Health and Welfare v. Doe*, 150 Idaho 103, 114, 244 P.3d 247, 258 (Ct. App. 2010). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion; acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before

4

it; and reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice. I.R.E. 403(b); *Doe*, 150 Idaho at 115, 244 P.3d at 259.

In this case, the record shows that the magistrate regarded the status of Doe's criminal charges as immaterial. However the magistrate was concerned with the facts and circumstances of Doe's encounter with the resident as Doe's behavior was relevant to the termination proceeding. Prior to the filing of the petition for termination, Doe's case plan was developed, in part, to address Doe's significant substance abuse issues. The resident's purported testimony concerned Doe's intoxication and unruly behavior during the incident and not the resulting criminal charges. Doe's willingness and ability to remain clean and sober in order to parent her children was a critical factor, and the resident's testimony regarding Doe's intoxication and behavior, given the timing of the incident, was relevant to the termination proceedings for that purpose. Therefore, the magistrate did not abuse it's discretion in denying Doe's motion in limine.

**B.      Best Interests of the Children**

Doe argues that the magistrate erred in concluding termination was in the best interests of the children. Doe asserts that she had a bonded and loving relationship with her children, exhibited good parenting skills, had been able to maintain safe and secure housing for her and her children, and was working toward sobriety. Doe contends that, although some witness testimony supported the magistrate's ruling, the testimony from those witnesses having the most involvement with Doe and the children suggests that termination of Doe's parental rights would do more harm than good to the children. Doe also argues that the magistrate's consideration of Doe's substance abuse as a dominant factor in its ruling suggests that the magistrate was looking for a guarantee that Doe could remain sober which, Doe argues, runs contrary to this Court's precedent. Thus, Doe concludes the magistrate did not properly consider the facts and circumstances of Doe's case and should have allowed her additional time to continue her progress and preparation to regain custody of her children.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interest of the child to terminate the parent-child relationship.

*In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interest, the trial court may consider: the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014); *see Doe*, 133 Idaho at 809-10, 992 P.2d at 1209-10; *Doe v. State, Dep't of Health & Welfare*, 122 Idaho 644, 648, 837 P.2d 319, 323 (Ct. App. 1992). A finding that it is in the best interest of the child to terminate parental rights must still be made upon objective grounds, supported by substantial and competent evidence. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Idaho Code Section 16-2010(1) states, in relevant part, that "every order of the court terminating the parent and child relationship . . . shall be in writing and *shall recite the findings upon which such order is based*, including findings pertaining to the court's jurisdiction." (Emphasis added.) Below, the magistrate made detailed oral findings of fact and conclusions of law at the termination hearing. The magistrate subsequently entered written findings of fact and conclusions of law. The magistrate concluded that Doe neglected her children by failing to comply with her case plan and accomplishing reunification in the required time period by failing to provide proper care, safety, and control necessary for the children's well-being. The magistrate determined that Doe also abandoned her children by willfully failing to maintain a normal parental relationship. Finally, the magistrate concluded that termination of Doe's parental rights was in the best interests of the children.[2]

_____

[2] The plain language of I.C. § 16-2010(1) unambiguously requires courts to issue written findings as part of the termination judgment. In this case, no party objected to the magistrate's written findings of fact and conclusions of law on the basis that they were insufficient. However, we have concerns with the magistrate's written findings of fact and conclusions of law. Although the magistrate conducted a thorough oral analysis of its findings of fact related to Doe's specific conduct at the conclusion of Doe's termination hearing, such analysis and specific findings were not incorporated into the magistrate's written findings of fact. Rather, the written findings of fact and conclusions of law appear to be a copy of the Department's verified petition to terminate parental rights and refers only to generic findings that closely mirror the language of

On appeal, Doe highlights conflicting witness testimony and relies on this Court's reasoning in *Doe III*, 150 Idaho 752, 250 P.3d 803 to argue that the magistrate should have allowed Doe additional time to show continued stability in her sobriety while the Department aided Doe in reunification with her children. In *Doe III*, this Court reversed the magistrate's decision to terminate a father's parental rights. *Id*. at 765, 250 P.3d at 816. That case was initiated after the father, an alcoholic, was arrested for striking one of his children. The children were placed into the Department's custody and a case plan was developed. The father initially complied with the case plan by attending treatment meetings and multiple weekly visits with the children. Thereafter, the father relapsed, lost contact with the Department, and was arrested for public intoxication. After spending time in jail, the father again showed progress with his case plan. For the ensuing four months, the father attended alcohol treatment sessions, completed assignments, obtained employment, and remained sober. Following this four-month period, the Department filed a petition to terminate the father's parental rights. The magistrate terminated the father's parental rights based on abuse and neglect. On appeal, the father did not contest neglect, but only contested the finding that termination was in the children's best interests.

After noting the guardian ad litem's argument that the father presented too much of a gamble to continue sobriety, this Court reasoned:

> [B]ecause Father could not provide a guarantee that he would never use alcohol again, the guardian was of the view that his parental rights should be terminated. Were the guardian's reasoning adopted, no parent with an addiction would ever be able to regain custody of his or her child. That is not the standard under Idaho law for terminating a parent's fundamental right to a relationship with his children.

*Id.* at 761-62, 250 P.3d at 812-13. This Court reversed, determining:

---

the relevant statutes. Moreover, relating to the best interests of the children, the written judgment includes only a conclusory statement that termination of Doe's parental rights was in the children's best interests. Given the gravity of parental right termination cases, we take this opportunity to express our disapproval of the practice of having attorneys prepare the written findings of fact and conclusions of law. Although we are deciding this particular case on the merits, the so-called written findings of fact and conclusions of law here are, in reality, conclusions of law and nearly devoid of any findings of fact.

> [The magistrate placed] excessive emphasis upon Father's admittedly abhorrent behavior prior to the removal of the children from his home . . . while disregarding or giving minimal attention to the compelling evidence of Father's success in overcoming alcoholism, complying with treatment requirements, maintaining remunerative employment, and becoming a nurturing parent with whom the children had developed a strong bond.

*Id*. at 763, 250 P.3d at 814.

In the instant case, Doe likewise contests only the magistrate's finding that termination was in the children's best interests and contends that the magistrate's decision, like in *Doe III*, disregarded her progress and sought a guarantee of future sobriety. However, while in both cases there is evidence of progress prior to termination, there are also significant differences. In *Doe III*, the father immediately took an interest in his case plan by completing a substance abuse assessment, beginning alcohol treatment, attending three weekly visits with his children, and being employed. *Id.* at 754, 250 P.3d at 805. The father relapsed once in the middle of his case plan and was uninvolved with the case plan for nearly two months, followed by a two-month period of incarceration. He lost his job. However, he thereafter was actively engaged in his case plan for a period of eight months until termination of his parental rights. *See id*. at 754-56, 250 P.3d at 805-07. The father regained employment, was working more than full-time, attended support meetings up to three times per week, attended prescribed alcohol treatment classes Monday through Thursday for two to three hours per evening, voluntarily attended other support groups for three to four hours each Friday night, attended weekly visits with his children, and complied with his case plan. *Id*. at 758, 250 P.3d at 809.

Here, the record indicates that Doe had a significant history of using numerous intoxicants (including alcohol, marijuana, and methamphetamine) which previously led to Doe losing custody of two older children. This case started when officers declared Doe's children in imminent danger when Doe was under the influence of alcohol, methamphetamine, and marijuana and left the children with a neighbor because Doe was unable to care for them. Due to Doe's substance abuse, the case plan required, among other things, that she maintain a clean and sober lifestyle and safely provide for the children, complete various assessments and follow the recommendations, submit to random urine analysis tests with consistent negative results, discontinue contact with others who use illegal substances or exhibit continued criminal behavior, and write a relapse prevention plan. The case plan also required Doe to complete a

8

mental health assessment and follow any recommendations. In order to establish stability, Doe's case plan required her to structure her daily schedule and maintain at least part-time employment in order to support her children.

In contrast to the father in *Doe III*, Doe's commitment and compliance with her case plan were sporadic and inconsistent. The record shows that Doe participated in various substance abuse and alcohol treatment programs. However, Doe did not comply with all requirements of the case plan by failing to complete multiple treatment requirements and recommendations, including outpatient substance abuse treatment. Doe missed multiple urine analysis tests and treatment sessions. Notably, throughout the duration of the case, Doe had multiple instances of relapse. Specifically, Doe continued use of methamphetamine and alcohol despite her participation in various substance abuse treatment programs. Doe also appeared heavily intoxicated, was out of control, and consumed prescription medications not belonging to her during her unlawful entry incident. The record also shows that Doe had consumed alcohol while on a public street and, in the days prior to her termination hearing, tested positive for methadone. Testimony also indicated that, following Doe's release from jail after her arrest for the unlawful entry incident, she failed to attend group and individual counseling or appear for drug and alcohol testing.

The record further suggests that Doe did not take responsibility for her actions, deflected blame, and minimalized or justified her conduct. Because of Doe's apparent indifference, the magistrate determined that Doe had not fully engaged in her treatment and lacked awareness of the impact her substance abuse had on her ability to parent the children consistently. Doe held a job initially as a certified nursing assistant but was terminated when she relapsed. Doe's testimony indicates she did not regain employment thereafter, despite receiving seven different job offers. Doe likewise failed to provide financial support for the children as required under the case plan. The record shows that Doe's visitations with the children were inconsistent and that she cancelled some sessions and failed to attend others.

While the magistrate acknowledged that Doe, when sober, was a good mother demonstrating positive parenting skills during some visits, it also found that evidence showed Doe's frequent lack of sobriety resulted in the opposite. As the magistrate observed, the record indicates that her children were detrimentally affected by Doe's inconsistent periods of sobriety,

creating instability for the children. The record also indicates that the children were safe, happy, and in a stable environment at the time of the termination trial.

As illustrated, Doe's conduct was volatile, resulted in inconsistent compliance with her case plan, and created instability for her children. Such conduct sharply contrasts with the consistent and diligent progress toward compliance demonstrated by the father's conduct in *Doe III*. Because Doe's conduct is distinguishable from the father's in *Doe III*, Doe's reliance on this Court's reasoning underlying our holding in *Doe III* is therefore misplaced. The record also belies Doe's contention that the magistrate, by emphasizing Doe's substance abuse issues, sought a guarantee of future sobriety. To the contrary, Doe's case plan and the magistrate's findings contemplated instances where Doe may relapse. Specifically, the case plan required Doe to complete a parenting safety plan for her children identifying how she would provide for their safety and stability in the event she had a substance abuse relapse. Rather than seeking a guarantee of sobriety, the magistrate stated that it regarded Doe's failure to prepare such a relapse safety plan significant and relevant to its decision.

Moreover, we note that Doe's argument on appeal suggests that the testimony from some complimentary witnesses, who Doe alleges had the most experience with her and the children during the reunification process, should have been given more weight than other more critical witnesses, who Doe alleges had limited contact. This Court will not second guess the magistrate by reweighing allegedly conflicting witness testimony on appeal. *In re Doe*, 157 Idaho 955, 958, 342 P.3d 667, 670 (2015) (holding that is the province of the trial court to determine the credibility of witnesses, the weight to be given their testimony, and the inferences to be drawn from the evidence).

Based on the foregoing, Doe has not shown that the magistrate erred by emphasizing Doe's substance abuse in finding Doe failed to comply with her case plan. Therefore, there was clear and convincing evidence to support the magistrate's finding that termination of Doe's parental rights was in the best interests of the children. Consequently, Doe has failed to show that the magistrate erred in terminating her parental rights.

**IV.**

**CONCLUSION**

The magistrate did not err in denying Doe's motion in limine. There was clear and convincing evidence that termination of Doe's parental rights was in the best interests of the children. Accordingly, the magistrate's judgment terminating Doe's parental rights is affirmed. Costs, but not attorney fees, are awarded to the Department on appeal.

Judge GUTIERREZ and Judge HUSKEY, **CONCUR**.