**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 53700**

| | |
|---|---|
| In the Matter of:  Jane Doe I and Jane Doe II, Children Under Eighteen (I8) Years of Age. ))) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, )) | **Filed:  June 18, 2026** |
| Petitioner-Respondent, )) | **Melanie Gagnepain, Clerk** |
| v. )) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| JANE DOE (2026-08), )) | |
| Respondent-Appellant. )) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. Anson L. Call, II, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Parrish Law Office; Craig Parrish, Conflict State Public Defender, Pocatello, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jason R. Chandler, Deputy Attorney General, Pocatello, for respondent.

_____

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights to Jane Doe I and Jane Doe II (Children).  Doe argues the magistrate court erred in finding Doe neglected Children and it was contrary to the welfare of Children to remain in or be returned to Doe's home, and that the Idaho Department of Health and Welfare (Department) did not make reasonable efforts to prevent the removal of Children from Doe.  The Department argues Doe's brief fails to comply with Idaho Appellate Rule 35(a)(b); the Department's actions during the Child Protective Act (CPA) case is not relevant in a termination proceeding; and the magistrate court's findings are supported by the record.  For the reasons stated below, we affirm the judgment terminating Doe's parental rights.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is one of three cases that were consolidated in the magistrate court but are not consolidated on appeal. The parties in the consolidated cases are Doe, her husband (Father), and the mother (Mother) of her husband's child (Child). Doe is the biological parent of Children, who are not biologically related to Father or Mother. Father and Mother are the biological parents of Child.[1]

Prior to this CPA case, Child lived with Mother and her husband in Oregon and Father lived in Idaho with Doe and Children. Child was placed into Father's and Doe's care based on allegations of abuse by either Mother or her husband. A short time after Child was placed with Father and Doe, Child was taken into protective custody following a diagnosis of abusive head trauma that occurred while Doe was Child's sole caregiver. The Department filed a CPA petition, and Child was placed into the temporary custody of the Department.

Following the hospitalization of Child, the Department initiated a separate CPA case and filed a notice of emergency removal of Children. A shelter care hearing was held on September 28, 2023, and the magistrate court concluded it was in the best interests of Children to be placed in temporary custody of the Department.

A case plan was developed for Doe to be reunited with Children. The case plan was designed to address the safety concerns that brought Child into care. The first safety concern was: "[Doe] has been unable to recognize or understand threats to [Children], as evidenced by the injury of [Child] in her household. It has been reported [Doe] has struggled with impulse control, as evidenced by past substance abuse usage." The goal associated with this safety concern required, in part, that Doe "will recognize or understand threats to [Children]." A task associated with this safety concern and goal required Doe to refrain from using physical discipline with Children and any other children in her care. Other tasks associated with this safety concern and goal required Doe to: demonstrate her ability to be protective by ensuring no one else uses physical discipline with Children; participate in a parenting class and demonstrate the skills learned in that class during visitation with Children; maintain counseling to learn coping skills; continue medication

---

[1]     Father's parental rights to Child were terminated; that appeal is pending in Docket No. 53692. Mother's parental rights to Child were also terminated; that appeal is pending in Docket No. 53666.

management; be present for Children's appointments; submit to random drug testing; and maintain a safe home.

The second safety concern was: "[Doe] has pending criminal charges that could impact her ability to be available to parent [Children]." The goal and tasks associated with this safety concern required Doe to comply with the ongoing criminal investigation. The case plan included additional requirements for case closure, one of which required Doe to resolve any pending criminal charges, refrain from obtaining any further charges, and complete a Department-approved parenting class. In January 2024, Children were placed in the temporary custody of their maternal aunt.

Doe began attending counseling and parenting classes. Doe tested positive for THC at the beginning of March 2024. In April 2024, Doe gave birth to a second set of twins, whose umbilical cords both tested positive for THC.[2] That same month, Doe and Father were served with an eviction notice and Doe reported to the Department that she would be moving into an apartment with her mother.

In June 2024, Doe again tested positive for THC and was struggling to attend and participate in her parenting classes, was struggling financially, and did not have stable housing. Doe was attending counseling and taking her prescribed medications. The Department also reported that Doe was struggling to interact properly with Children during visitation and that Doe's extended, six-hour-long visits had been discontinued due to "lack of follow through and progress." Throughout the rest of 2024, Doe continued to struggle with attending her counseling appointments and parenting classes.

Doe was charged with aggravated battery for the incident involving Child. Pursuant to a plea agreement, the State amended the charge to misdemeanor injury to child, Doe pleaded guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), and was sentenced to six months in jail, which she served. Prior to the termination trial, a familial pre-adoptive placement for Children was approved.

After Doe was released from incarceration, she maintained employment, was taking medications prescribed for her mental health concerns, and maintained stable housing with two roommates. The Department reported that Doe still struggled with attentiveness to Children during

---

[2]     Doe's parental rights to those children are currently being adjudicated in a separate CPA case.

visitation as well as attendance for all visits. Due to Doe's inconsistencies with visitation, the Department reduced visitation to one two-hour visit per week.

In January 2025, the Department filed a petition for termination of Doe's parental rights pursuant to I.C. §§ 16-2005(1)(a)(ii) and 16-2002(3)(b). The termination trial was held July 28 and August 1, 2025, and October 16-17, 2025. Following the trial, the magistrate court found that Doe neglected Children on three alternate bases and that termination of her parental rights is in the best interests of Children. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

### A.      Statutory Basis for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her Child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, I43 Idaho 383,

4

386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the Child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a CPA case and the Department has had temporary or legal custody of the child for fifteen[3] of the most recent twenty-two months and reunification has not been accomplished by the last day of the twelfth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

In this case, the magistrate court found three alternate statutory bases upon which Doe's parental rights could be terminated. First, the magistrate court found Doe had neglected Children as defined by I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a), and 16-1602(31)(a) because Children were without proper parental care and control as a result of Doe's conduct or omission and her neglect

---

[3]     The statutory time frame under Idaho Code § 16-2002(3)(b) to terminate parental rights was  amended to twelve of the most recent twenty-two months; the amendment does not affect the analysis or outcome of this case.

or refusal to provide them. The magistrate court noted that Doe refused to acknowledge her responsibility and role in injuring Child despite the fact that Doe pleaded guilty to a misdemeanor injury to child charge related to the incident involving Child. The magistrate court also found Doe failed to acknowledge difficult facts, which led to irrational and unreliable acts. Second, the magistrate court found Doe had neglected Children as defined by I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a), and 16-1602(31)(b) based on Doe's inability to discharge her parental responsibilities. The reasons for this were the same reasons supporting the first finding of neglect. Third, the magistrate court found Doe neglected Children pursuant to I.C. §§ 16-2005(1)(a)(ii) and 16-2002(3)(b) because Doe failed to complete her case plan and Children had been in the Department's custody for fifteen of the most recent twenty-two months. The magistrate court found Doe failed to obtain safe and stable housing and failed to complete a parenting class. Finally, the magistrate court found Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(a)(iv) for many of the reasons that supported the other statutory bases for terminating Doe's parental rights.

Preliminarily, we note that Doe's appellate brief does not comply with Idaho Appellate Rule 35(a)(6). Idaho Appellate Rule 35 sets out the required contents for an appellant's brief and provides that the argument section of an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6). The argument section of Doe's opening brief is ten pages. In those ten pages, there is only one citation to the record or transcript. While Doe cites to the record in support of her argument in subsection three of her reply brief, that is insufficient to avoid waiver. *See Dodd v. Jones*, 175 Idaho 382, 395, 566 P.3d 379, 392 (2024) (holding although the Dodds presented additional argument and authority in support of an issue inadequately supported in their opening brief, the Court would look only to the initial brief because "those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief"). This Court will not search the record on appeal for error. *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 103, 113, 244 P.3d 247, 257 (Ct. App. 2010). Even in an appeal from the termination of parental rights, "we will not consider an issue which is not supported by cogent argument and authority." *In re Doe (2013-15)*, 156 Idaho 103, 109, 320 P.3d 1262, 1268 (2014). As a result, Doe has waived consideration of all the claims raised on appeal. But even if reviewed on the merits, Doe's claims fail.

Two, and perhaps all, of Doe's claims relate to actions that did or did not occur during the CPA proceeding. First, Doe argues the case plan required her to admit to her role in injuring Child. Second, Doe argues, in part, that the magistrate court erred in determining it was not in Children's best interests to remain in the home. Finally, Doe argues the Department erred in failing to make best efforts towards reunification. All of these arguments are challenges to either case plan tasks or circumstances arising in the CPA proceeding.

The Idaho Supreme Court has definitively and repeatedly ruled that an "inquiry into the Department's efforts at reunification is irrelevant to the termination of parental rights." *Idaho Dep't of Health & Welfare v. Doe*, 164 Idaho 883, 888, 436 P.3d 1232, 1237 (2019); *see also State, Dep't of Health & Welfare v. Doe (2019-31)*, 166 Idaho 357, 361, 458 P.3d 226, 230 (Ct. App. 2020) ("It is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under I.C. § 16-2005."). Moreover, there are several opportunities for immediate appellate recourse for a magistrate court's determination of the Department's reasonable efforts. As this Court previously ruled in *Doe (2019-31)*, 166 Idaho at 360-61, 458 P.3d at 230-31, "[t]here is a statutory right to appeal at several points during the pendency of the child protection proceeding." Idaho Code § 16-1625(1) sets forth this right and provides, in part, that an aggrieved party may appeal "[a]n adjudicatory decree," "[a]ny order subsequent to the adjudicatory decree that vests legal custody of the child in the department," or "[a]ny order subsequent to the adjudicatory decree that authorizes or mandates the department to cease reasonable efforts to make it possible to return the child to his home." I.C. § 16-1625(1)(a)-(c).

If Doe had concerns or issues regarding the terms of the case plan or reunification under the CPA, those concerns needed to be raised in the CPA proceeding, not the termination proceeding. Doe's failure to challenge the validity of the case plan, her concerns regarding the origins of the case plan, or the efforts of the Department for reunification in the CPA proceeding precludes our review of these issues in the termination proceeding.

Doe also waives any challenge of the magistrate court's conclusion that Doe neglected Children by failing to complete her case plan pursuant to I.C. §§ 16-2005(1)(a)(ii) and 16-2002(3)(a) or that Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(a)(iv) because Doe does not address these alternate statutory bases for terminating her parental rights. If the court grants a judgment on more than one independent basis and the appellant

7

does not challenge each basis for termination, then we must affirm the judgment. *Idaho Dep't of Health & Welfare v. Doe (2016-09)*, 163 Idaho 707, 711, 418 P.3d 1216, 1220 (2016). Consequently, we affirm the magistrate court's findings that there were three alternate statutory bases upon which to terminate Doe's parental rights. But even if reviewed on the merits, Doe's claims fail.

Doe takes issue with the magistrate court's finding that Doe failed to be accountable for the injuries to Child. While Doe acknowledges her guilty plea, she notes that she entered the guilty plea "in an effort to comply with the case plan," because the case plan required Doe to demonstrate her ability to be an available caregiver for Children and to resolve any pending charges. Doe argues that if she fought the criminal charge, it might have been perceived as failing to resolve the charge as required by the case plan. Doe next argues that the "risk of losing in trial would have catastrophic implications for reunification with [Children] given that the maximum penalty for aggravated battery is fifteen (15) years," and so she pleaded guilty to misdemeanor injury to child to avoid a felony conviction.

The entry of a guilty plea was not the only way Doe could resolve her criminal case, and she cites no support for her statement that requiring the State to prove her guilt might be perceived as failing to comply with the case plan. A party waives an issue on appeal that is not supported by argument and authority. *Doe (2016-09)*, 163 1daho at 711, 418 P.3d at 1220. Second, Doe's reason for entering her guilty plea does not address the magistrate court's finding that even after entering her plea and serving a six-month sentence, Doe failed to acknowledge her role in Child's injuries.

As to Doe's failure to complete the case plan, Doe argues that she "completed the case plan as required"; the record demonstrates the opposite. Specifically, Doe did not obtain suitable housing required by the case plan for Children to return to her care. The case plan required Doe to remain drug-free, but Doe tested positive for THC several times. Additionally, the case plan required that Doe successfully complete substance abuse treatment and parenting classes, neither of which Doe completed because of her inconsistent attendance and lack of participation. Doe claims there were extenuating circumstances--her pregnancy and subsequent birth of another set of twins, illness, and her incarceration--that prevented her from completing the case plan. However, Doe explicitly disavows any claim of impossibility in completing her case plan. Instead, she argues these "significant life changes" were given no accommodation, which impacted her

ability to complete classes. Doe did not raise any of these issue during the CPA proceeding. Doe did not raise this issue during the termination trial and elected not to provide a written closing argument where she could have addressed this issue. Generally, issues not raised below may not be considered for the first time on appeal. *Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991).

The magistrate court did not err in finding Doe neglected Children as defined by I.C. §§ 16-2005(1)(a)(ii), 16-2002(3)(a), and 16-1602(31)(a) for failing to provide adequate care and control for Children; Doe neglected Children pursuant to I.C. §§ 16-2005(1)(a)(ii) and 16-2002(3)(b) for failing to complete her case plan; or that Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(a)(iv), as alternate statutory bases upon which Doe's parental rights could be terminated.

**B.    Best Interests**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State*, *Dep't of Health & Welfare*, 120 1daho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that termination of Doe's parental rights is in the best interests of Children. Doe does not challenge this finding on appeal. The only mention of "best interests" in Doe's brief is one of her arguments that the magistrate court "erred in finding it was in the best interest[s] of [Children] to be removed from their home and placed in the legal custody of [the Department]." This relates to the standards in the CPA proceeding where the magistrate court must determine whether it is contrary to a child's welfare to remain in the home and it is in child's

best interests to be removed. *See* I.C. § 16-1603. A party waives an issue on appeal that is not supported by argument and authority. *Doe (2016-09)*, 163 Idaho at 711, 418 P.3d at 1220.

But even if a challenge to the magistrate court's best interests conclusion was properly before this Court, a review of the record supports the magistrate court's finding. Doe failed to take responsibility for her actions and failed to obtain suitable housing. Children are doing well in their familial foster home placement with their younger siblings. Consequently, the magistrate court's finding that termination of Doe's parental rights is in the best interests of Children is affirmed.

## IV.

## CONCLUSION

Doe failed to comply with I.A.R. 35(a)(6), resulting in a waiver of her claims on appeal. Even when reviewed on the merits, Doe's challenges to actions that did or did not take place in the CPA proceeding are not properly before this Court for review. Doe failed to challenge the alternate statutory bases upon which Doe's parental rights could be terminated, so those findings are affirmed. Alternatively, the magistrate court did not err in finding that Doe neglected Children by failing to complete the case plan within fifteen of the most recent twenty-two months Children were in the Department's custody. Finally, Doe fails to challenge the magistrate court's finding that termination of Doe's parental rights is in Children's best interests, but a merits review indicates the finding is supported by substantial evidence in the record. Therefore, the judgment terminating Doe's parental rights is affirmed.

Chief Judge TRIBE and Judge LORELLO **CONCUR**.